I'm going to try to reserve two minutes of my time for rebuttal, just to let the court know. The case law that's quoted or cited in my brief speaks of the First, the prosecutor here just sat there and said nothing when the court expressly told Mr. Hernandez he could withdraw his plea if the sentence was not in the range of 108 to 135 months. Second, the prosecutor made what, at least under the government's interpretation of this plea agreement, was a completely illusory promise, or what the prosecutor called semantics. When she said, oh well we won't argue departures, but apparently all the time planning to argue for a variance. Third, the prosecutor actually argued in her sentencing memorandum for both a, quote, departure, unquote, and a, quote, variance, unquote. So could we go to the record to confirm each of those assertions that you've made? Could you point us to the record where the court said that there could be an appeal if the sentence was higher than 108 to 135? That's not quite what I said, Your Honor. But that's why I'm asking you the question, because that was your representation. No, no, no, the court said that the defendant could withdraw his plea. Okay, that, Your Honor, appears in Excerpt of Record 132, and it's really quite clear there is no what the government calls conflation. There's no mention at all of the 10 to 15 year range. The court told Mr. Hernandez, and I'm quoting directly from Excerpt of Record 132, quote, you and the government have agreed to a specific sentence or sentencing range, unquote. Quote, that sentencing range is 108 to 135 months, unquote. And that's true, that's the sentencing range, but that's not the sentence to be imposed. Third, right after that, Your Honor, the court said, quote, if I choose not to follow the terms of the agreement with respect to that sentencing range, I'll give you the opportunity to withdraw your plea. And the only sentencing range that's been referred to, the one referred to immediately before that, was 108 to 135 months. It's true, isn't it, that I reread the colloquy at the plea proceeding, and there is never a single reference to the possibility of a 180-month sentence. There's a reference to Paragraph 16 of the plea agreement which talks about it. But if you're the defendant sitting in the courtroom listening to the judge talking to you, you do not ever hear the phrase 180 months as a possible sentence. What you hear is 110 to 135 months. And he doesn't say it's the sentencing guideline range. Correct. He says it's the sentencing range, and he's binding himself. And it's that sentencing range for which he'll be given an opportunity to withdraw his plea. Now, I do have to correct Your Honor a little bit. About four or five pages later in the transcript, the prosecutor reads a provision that says an appeal waiver is tied to 10 to 15 years, but not the opportunity to withdraw the plea. That's what the appeal waiver is tied to. And, of course, there's nothing to stop a plea agreement from tying an appeal waiver to some different range than the parties have agreed to. But the plea agreement has the 10 to 15 years in there. Correct. The plea is not divorced from the plea agreement. The plea colloquy is not divorced from the plea agreement. Except the plea colloquy can modify the plea agreement. And, in particular, it does that when the prosecutor, who the courts say have that heightened responsibility, sits there and doesn't say anything. So what's the standard for when a plea agreement has been modified verbally? How do we determine that? When a judge says the plea agreement says one thing, when the judge tells a defendant he can withdraw his plea, if he's not given a sentence of 108 to 135 months. What case says that that's a modification? The case is the Fourth Circuit case that I cite in my brief, I believe says that. The Ninth Circuit case? No, there's not a Ninth Circuit case that I found, Your Honor. There are certainly Ninth Circuit cases that I think have the same tenor of the prosecutors having that greater responsibility. But there's not a Ninth Circuit case on these exact facts. And the case I quote in my brief is not on these exact same facts. But it does talk about how a prosecutor has a heightened responsibility to make sure this doesn't happen. Your Honor, also ask me, I believe... Mr. Kent, when we assess this, do we assess the record in totality, looking at the plea agreement, looking at the fact that it was made a part of the plea proceedings, look at some imprecise language and then balancing that against the clarity? I don't think you do, Your Honor, because the written plea agreement comes first. The plea colloquy that I'm describing modifies it. And I guess if it were truly ambiguous, if there really is what the government wants to call a, quote, conflation, unquote, of the two ranges, maybe, but it's clear here. I mean, please look at excerpt of Record 132. And as Judge Ponsor suggested, look at the rest of it. There's no reference at all in terms of the opportunity to withdraw the plea of 10 to 15 years. Absolutely none. And there's a clear reference to 108 to 135 months. Counsel, just so I understand your argument, are you saying then that once the district court judge made that reference, the plea agreement goes out the window? Not if the prosecutor says, excuse me, Your Honor, but I think you're mistaken. The 108 to 135 is just the guideline range. The range under which the defendant can withdraw his plea is 10 to 15 years. That's what the prosecutor should have done. So your argument is if the prosecutor does not interject and correct the court, the plea agreement is nullified? Well, not nullified. It's modified in that one respect, yes. I'm reading from 132 here. It says, the judge says, and that sentencing range is between 108 and 135 months. It doesn't say sentencing guideline range. It says that sentencing range. And then he says, is that correct, Mr. Garagos? Mr. Garagos says, yes, Your Honor. And then the court says, is that correct, Ms. Chu? She's the assistant U.S. attorney. Ms. Chu, that is the sentencing range we stipulated to. That's what she says on page 132. Do I have it right? Let me check, Your Honor. I thought, to be honest, she might have used the word guideline there, but let me check. And I have a comment about that if that's the case. The transcript that I have. No, you're right. You're correct. It only says sentencing range. You're correct. So the benefit of the doubt that I was almost ready to give her. What's really troubling to me, Your Honor, is she says it in that sort of qualified way, which makes you think she realized something was being said that was possibly misleading. And then she didn't correct it when he later says, and then we'll give you the opportunity to withdraw your plea. Judge Rawlinson, you asked me to point you to the record. I think you were maybe asking about all my issues. Maybe I can point you, Your Honors, to the record on the government. It's crystal clear that the government argues for both a, quote, departure, unquote, or, quote, variance, unquote. That's what it said at the beginning of its sentencing memorandum. That's what it said at the end of its sentencing memorandum. If you look at Excerpt of Record 110, in fact, the government doesn't even mention variance, but just mentions departure in the last sentence before its conclusion. It argues, quote, a 15-year sentence, which constitutes a three-level departure, is justified by the Section 3553A factors. No reference at all there to variance. But 3553A, by definition, is variance language. Well, yes, but it's also the exact word departure is. Your Honor, what was going on here? It's something that, frankly, good sentencing advocates often do, if they're allowed to, which the prosecutor wasn't in this case. Some judges, after Booker, were in heaven. I don't need to worry about the guidelines. I can do whatever I want. That's a little bit of an exaggeration, but they felt free. They didn't care about the guidelines, except, of course, they had to give them some consideration. Other judges were used to them. Other judges still felt some respect for the sentencing commission and wanted to tie things to the guidelines, and so they were more comfortable if they could call it a departure under some sort of guidelines analysis. And so a good sentencing advocate does exactly what the prosecutor does here. You argue it is a variance, or, Your Honor, if you're more comfortable, it's also a three-level departure. Well, that's fine and good. That's what we all did, but you can't do that if the plea agreement says you can't do it. And the plea agreement, however it's interpreted... Let me ask you this, Mr. Gunn, because I agree with you that there's some arguable contradiction within the two provisions of the plea agreement, one setting out the range of 108 and 135. That's the guideline calculation, but yet the government reserving its ability to argue for a sentence in the range of 10 to 15 years in the paragraph that immediately follows it as a 3553 analysis. So I think there's some debate about whether that's what they did, but go ahead. I'm sorry, Your Honor. But looking at it favorably towards the defendant, there's some arguable contradiction there, and I agree with you that perhaps the AUSA should have been a little more on the alert in terms of what the court said. And I do think that the best argument for your side in the transcript is ER 132, that page that we were talking about. But the first thing that the court said when the judge began the plea colloquy is to say, here's a plea agreement, you're pleading pursuant to that plea agreement, and this plea agreement will be incorporated and made a part of the record. So that sort of creates the ambiguity. That's why I go back to my totality of the record question. Shouldn't we then look at the plea agreement which got incorporated into the record in terms of ascertaining whether this was a couple of instances of loose language or somebody misspoke, but everybody clearly knew what was going on here? But it wasn't loose language, Your Honor. It was crystal clear language. He clearly said the sentencing range is 108 to 135 months, and you get to withdraw your plea if that's not what is sentenced. I agree if there was some sort of ambiguity and there was 10 to 15 years referenced at the same time, and it wasn't clear which of the words that sentencing range referred to, but that's not what it says. And the case law, at least the Fourth Circuit case law I cite, and I think it's consistent with principles in this court's case law too, says that that affects a modification of the plea agreement if the government doesn't correct it. And that's what the prosecutor should have done here, and she didn't. All right, thank you, Counselor. You've exceeded your time.  Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, Carrie O'Neill on behalf of the United States. I'll turn to the first issue about the unilateral modification of the plea agreement. As a prefatory matter, this court would be reviewing that for plain error. I think, Judge Nguyen, you are correct. This has to be a totality of the circumstances inquiry. First of all, the idea that the district court could unilaterally modify the plea agreement actually contravenes his power under Rule 11c, and he would have been modifying it in a way that violated the statutory mandatory minimum sentence. Moreover, the plea agreement is clear that the binding sentencing range is 10 to 15 years. What position does that put a defendant in who's sitting in a courtroom, looking at a judge, describing the situation to him, and the judge says, in the agreement, you and the government have agreed to a specific sentence or a specific sentencing range. I believe that's at page 19 of the agreement, and the sentencing range is between 108 and 135 months, right looking in the eyes of the defendant. That's the sentencing range that's been agreed to, and then both attorneys on the record say yes. But, Your Honor, that... Isn't that plain error, if anything is? Absolutely not, Your Honor. I respectfully disagree. That was actually an accurate reflection. The parties had both stipulated to a guideline sentencing range, which was at page 19, paragraph 15. So when the government and defense counsel both at that point said yes, Your Honor, that was accurate. That was clear. But isn't it clear from the transcript that he's not talking about the sentencing guideline range? He's talking about the sentencing range that the individual would be permitted to withdraw his plea for if they went over it. That's the context. I think what follows is the troubling aspect, and the government argued in its brief that, yes, there could be viewed a conflation there of both the binding sentencing range as well as the guideline range. But I think this court's inquiry, as stated by United States v. Arias Espinoza, which came out of this court in 2012, is not just the court's statement. It's also, how did it affect the defendant? Was there detrimental reliance? What were the defendant's reasonable expectations about his rights? And, in fact, defense counsel keeps pointing to United States v. Wood out of the Fourth Circuit. The facts there are totally in apposite to what had happened here. In Wood, there was a pervasive mischaracterization about the defendant's rights to challenge drug quantity at sentencing. And then Wood itself looked to the defendant's subsequent actions to see if there had been detrimental reliance on whatever this mischaracterization of the plea agreement was. It's a pretty stark record, the one that we're talking about, page 132, where the court said the sentencing range is between, I think, 108 to 135. That's paragraph 15 of the plea agreement. And if I choose not to follow that, you get to withdraw your plea. Is that record counterbalanced by any discussion of, well, then I'm going to have to look at the 3553 factors in determining what the appropriate sentence is or any discussion of the government reserving its right to argue for variance during the plea colloquy? During the plea colloquy itself? I believe that actually the court's discussion of this sort of disputed part was preceded by a discussion of what the court looks at when it sentences the defendant. If I may. On page 131, the court starts off the discussion by addressing the defendant, informing him he's going to be sentenced under the Sentencing Reform Act. The Sentencing Commission has issued guidelines in determining your sentence. I will be required to calculate those applicable guidelines, consider that range, look at departures and other sentencing factors under the statute. And then leads into this discussion about the sentencing guideline range that was on page 19, paragraph 15 of the plea agreement. And then arguably, yes, the district court conflated the two. But when he asked for the government and defense counsel's assent to his statement at that point, the initial point about what was on page 19, that was correct. And counsel, may I ask you, did the defense bear any responsibility, in your view, to correct the court if the court's understanding was incorrect in the defense's view? I think so, Your Honor. I wouldn't put the weight on defense counsel to object. I think a defense counsel would object if he believes his client is being misadvised. But I think what is more important in terms of the defense responsibility here is that subsequent to the plea colloquy, throughout the entire sentencing proceedings, it is never once mentioned. The defendant never once expresses the belief that his new binding sentencing range both falls below the statutory mandatory minimum and is almost four years, the high end of it at 135 months, is almost four years below what the plea agreement said was the high end at 180 months, 15 years. If the defendant detrimentally relied on what the district court may have advised him about, it would have been in the record, and it's not. And in fact, at ER 32, at sentencing, during the defendant's allocution, he stands by the plea agreement, and he says, and I quote, I completely and entirely respect the plea agreement that I signed with my attorney and Ms. Cho, and I know that's probably what I deserve for this charge. And that reminds me of United States v. Robertson out of this court, in which the defendant, for the first time on appeal, was bringing a similar breach claim, alleging, I thought, I'm sorry for interrupting you, counsel, I thought I recalled something Mr. Geragos said about a breach, that the government's arguments for upward departure of surveillance, this was somehow a breach, and I don't have the short. It's 11 and 58, that's a transfer. Yes, Your Honor, so that ties into the defendant's third issue regarding the government's use in its sentencing position paper. Do you concede that you promised in the plea agreement not to argue for a departure over the sentencing guideline range? Yes, we agreed in the plea agreement under Paragraph 15 not to argue for a sentencing departure, which is a term of art, under Irizarry out of the Supreme Court. Isn't that just hiding the ball? I mean, can you just say, we agree that we're not going to argue for a departure over the 135 months, and in the back of your mind say, got my fingers crossed, we're really going to argue for a variance. No, Your Honor, there is absolutely no subterfuge here. Paragraph 16 of the plea agreement is clear. It specifically refers to the statutory sentencing factors of 18 U.S.C. section 3553A. It never bars the government from arguing for a variance. Defendant never objects throughout the entire proceedings to the government's repeated argument for a variance up to the 15-year level. I understand the defendant's argument, which is this court, on appellate review, examines departures and variances for substantive reasonableness, and therefore he wants to conflate the two in district court. That's contrary to United States v. Ellis, where this court didn't do it. It's contrary to Irizarry, where the Supreme Court made clear departures is a term of art under the guidelines. For variances in Irizarry, Rule 32 of the Rules of Criminal Procedure doesn't apply. So he could have corrected the problem if the defense attorney had been on his toes and said departure or variance, and then the government would have said, oh, well, we won't agree to that in a plea agreement because we want to be able to argue for a variance even though we're giving up our right to argue for a departure. Your Honor, these are repeat players in the federal system, defense counsel as well as the U.S. Attorney's Office here. These types of plea agreements are clear. So you're saying that the defense attorney really knew that you had the power to argue for a variance over the 135 months, even when you were promising not to argue for a departure over the 135 months? I can't say what the defense attorney knew. What I can say is that the plea agreement is clear. I can also say that there was never any objection to the government arguing for a variance. What about page 57 of the transcript? That is precisely why in the discussions we had prior to this that it was our position that they were breaching the agreement by urging the departure. And you use the word departure, by the way, in your advocacy of the sentencing, don't you? Well, if I may, I'm over my time, but if I may, almost over my time. Thank you, Your Honor. As an initial matter, it is the government's position that that was actually not an objection. It was a statement of a previous position by defense counsel that was never expressed to the court at the time it was apparently held. If you read it, everything is in the past tense. That is precisely why in the discussions that we had prior to this that it was our position that they were breaching the agreement. That is not sufficient to put the court on notice that at that moment the defendant was objecting to the government's use of departure twice in its sentencing position paper. Moreover, as in Robertson, which held that the government's, excuse me, the defendant's statement that now acceptance of responsibility is where we differ, this court held that wasn't sufficient as an objection. I'm having a little bit of trouble with your argument, frankly, because I don't think the plea agreement was as clear as it could have been. You know, I understand that paragraph 15 sets out the guideline calculation, and I understand that the government can say, look, we're not going to argue for any other, the application of any other specific offense characteristics, but we're going to reserve our right to argue for a variance in the range of 10 to 15 years. That would be much clearer. And in your earlier argument, I thought you said that departure in this context is used as a term of art and that it's well known to both players on both sides, but as the court pointed out during the sentencing, the government used the term departure and variance. The government was the one that conflated the two. So what do you make of those portions of the record? Yes, Your Honor. Obviously, the record isn't as clear as I would like it to be, but I do believe that the plea agreement was clear in its structure, separating out the government's restriction from arguing for departures and allowing it to argue for a variance, and the defendant never objected to the government's actual argument for a variance. Turning to the use of the term departure in its sentencing position paper, I think what is important is, again, the defendant didn't actually object to a breach on this point, and this court would be reviewing this for plain error. But even if it reviews DeNovo, United States v. Ellis was on DeNovo review in front of this court, and that case is similar because there, the government bound itself not to request a departure, it was allowed to request variances, and twice in its sentencing position paper it used the term departure. And what Ellis said, essentially, is that this is not a magic words test. The government doesn't just write departure in its sentencing position paper and there is an automatic breach. A court in Ellis made clear, and I quote, that it looks to see what the government had in mind and it looks to see what the clear import of its argument was. And yes, Your Honor, there was a clumsy word choice here in the government sentencing position paper. Not repeated in its subsequent position paper, not repeated at court. But it's an initial position paper, yes, it shouldn't have been used, and it was. But what was the clear import of what the government was trying to do? It never once, as in Ellis, asked the district court to change the offense level. It never said, District Court, recalculate what's in the pre-sentencing report. Recalculate what's in the plea agreement. That guideline offense level is wrong. And that's the clear import. The clear import is seeking a higher ultimate sentence, not a recalculation of the guidelines. And that places this case firmly in line with United States v. Ellis, whether this court reviews it on plain error or de novo. It's not a magic words test, and Ellis makes that clear, Your Honors. That's what I was observing, that normally if there's a departure request, that there's a guideline section that's referenced and a finding is made as to whether or not the provisions of that guideline section are met. That's what I was looking for in terms of whether or not there was a departure request. Not just the word being used, but whether it's tethered to a specific guideline section and an argument made that this section should apply. And if you review the sentencing position paper that the government submitted, there is no guideline departure section. Section 3 of the pleading is devoted to an analysis of the statutory sentencing factors, the Booker factors. There is no recalculation, as Your Honor points out. Thank you, Counsel. You've exceeded your time. Thank you. Counsel, we'll give you a minute for rebuttals. Let me start with your last point, Judge Rawlinson. It's true that sometimes departures are tied to guideline sections, but often, certainly prior to Booker, they were not. The idea that guidelines failed to take certain defense factors into account, that's straight out of Kuhn. That's one of the government's arguments, that the guidelines didn't capture the full extent of the defendant's conduct and the number of victims. That almost exactly mirrors language you find in guidelines departure opinions before Booker, that there were aggravating factors not reflected in the guidelines. That almost identically tracks the statutory departure provision. The prosecutor, Your Honor, talked a lot about Ellis. Let me tell you how Ellis is distinguishable. It's distinguishable in at least two or three important ways. First of all, the plea agreement in Ellis did exactly what Judge Nguyen suggested the plea agreement could have done here. It said the government wouldn't argue for, quote, departures, unquote, but it also expressly reserved the right to argue under Booker for a sentence of up to 151 months. Yes, that put the defendant or the defense attorney on notice. The prosecutor, one other thing about Ellis, Your Honor, the court, there the word departure got used instead of variance in what appeared to be an accidental way in a couple of places, and the court called it clumsy wording. Here the word was used much more deliberately. It got tied to another guideline's concept by referring to this as a, quote, three-level, unquote, departure. Why do you suppose defense counsel raised no objection? Well, Your Honor, that's one interesting thing. The prosecutor, and there's nothing in the record about this, said, oh, these are repeat players. Well, Your Honor. I'm asking you in terms of the record, not the argument. But why wouldn't the defense counsel say that the guideline sentencing range is the maximum sentence? Well, first of all, he did eventually object by making a somewhat unclear objection, I digress, that there was a breach by arguing for a departure. That could be read to incorporate this. Second, I believe there's plain error here anyway, even if he didn't. I'm speculating, Your Honor, but I can think of three or four reasons, none of which I think are necessarily very good. One is he may have just, remember he argued then for some downward departures in his sentencing memorandum. Maybe he just said, well, if they're going to do this, I'll do this tit-for-tat thing. The other possibility is maybe he just thought, I'm going to let this slide. I don't think the court's going to do this, so I'm just going to make my arguments and sort of keep this clean and not into a sort of cat fight. But when the court said the 108 to 135 is the sentencing range, both parties agreed. Oh, you mean why didn't he say something then? I don't know, Your Honor. I don't know. It's an interesting question. I started reflecting on what my obligations would be as a defense attorney there. On the one hand, maybe I have an obligation to, quote, correct the court, unquote. On the other hand, the prosecutor's there too to do it. Do I have a duty of loyalty to my client if I know the case law, and this attorney may or may not have, if I know the case law that that affects a modification of the plea agreement, do I have a duty of loyalty to my client to not be the one to correct it? I'm not sure of that. I don't know if those things were going through the attorney's mind. I don't know if he just didn't hear what was said. But the case law, I think, pretty clearly puts the responsibility on the client. Not on the client. I'm sorry, on the prosecutor. One last thing I wanted to say in response to a point Judge Ponsor made about how, well, isn't it sort of almost two-faced to say, well, I'm not going to argue for departure when you're all of a sudden planning to argue for a variance? It's even worse, Your Honor, in the Ninth Circuit, because in the Ninth Circuit, given the case law about departures being obsolete and anachristic, it is literally true that any argument I want to make as a departure argument, I can just step over here and change the word to variance. It doesn't even restrict the arguments I can make. Counsel, could you stay at the mic, please? I'm sorry, Your Honor. So that was the last point I wanted to make. Actually, to repeat players, this is not a public defender here, you'll notice. It's a retained attorney. So it's not necessarily someone who's a repeat player in the federal system. There's certainly nothing in the record of that. All right, thank you. Thank you, Your Honor. Thank you to both counsel for your helpful argument. The case just argued is submitted for a decision by the court.
judges: Ponsor, Rawlinson, Nguyen